YOLANDA MOTON       *       NO. 2022-CA-0747

VERSUS       *

      COURT OF APPEAL

SEWERAGE & WATER       *
BOARD OF NEW ORLEANS       FOURTH CIRCUIT

      * 

      STATE OF LOUISIANA

      * * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9222 C\W 9223, 9224
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

Yolanda Moton
340 Travis Drive
Avondale, LA 70094


      COUNSEL FOR PLAINTIFF/APPELLANT

Benjamin Landau-Beispiel
MaryJo L. Roberts
THE KULLMAN FIRM
1100 Poydras Street, Suite 1600
New Orleans, LA 70163


      COUNSEL FOR DEFENDANT/APPELLEE



           **AFFIRMED**
           **MAY 10, 2023**

This appeal arises from a Civil Service Commission ("CSC") decision. Ms. Yolanda Moton ("Moton") appeals the CSC's January 24, 2022 decision, which denied her appeals regarding her demotion by the Sewerage & Water Board of New Orleans ("S&WB").[1] For the reasons that follow, this Court affirms the CSC's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Moton was initially hired by S&WB in 2018 as a paralegal in the legal department, and gained permanent employee status in that position later that same year. On October 28, 2019, Moton was promoted to a Management Development Specialist II in S&WB's Support Services Department ("Support Services"). Moton's position in Support Services was probationary, and subject to a working test period of one year, ending on October 27, 2020. Mr. Terrance Wills ("Wills") was Interim Director of Support Services and was Moton's direct supervisor.

On October 10, 2020, S&WB demoted Moton back to her position as a paralegal in the legal department.[2] The parties dispute the factual circumstances that led to Moton's demotion, and the cause.

---

[1] The CSC also denied Moton's motion for rehearing on January 18, 2022.

***Disputed Facts***

At the CSC hearing, Wills testified to a series of incidents Moton was involved in which led to him recommending her demotion. Wills recounted an incident in December 2019, in which he personally overheard Moton compare S&WB's Central Yard facility to Angola Penitentiary. Wills explained that Central Yard employs formerly incarcerated individuals and is predominately African American. Wills stated that he found the comment offensive and demeaning to Central Yard employees, even if it was intended as a joke. Wills met with John Wilson (Director of Support Services at the time) regarding the comment, and testified that he and Wilson later met with Moton to address the issue, advising her to be more mindful of her demeanor in the office. Wills testified that they informed Moton that this meeting was a counseling session, but that it was not S&WB practice to enter it into Moton's personnel file.

Wills said that Moton was pleasant and cooperative following this meeting, but that in 2020, after the Covid-19 pandemic began, "things, kind of, got a little dicey." Wills testified to having received several complaints from other employees regarding Moton's aggressive nature and inappropriate comments, which led to another informal meeting with Moton held on August 10, 2020.

Wills next described a meeting with Moton which occurred on September 22, 2020.[3] Wills explained that this meeting was initially scheduled in response to

---

[2] *See* Civil Service Rule VII, Section 1.5 (allowing employees with permanent status in another position to return to that position when they are removed from a promotional position during their probationary test period).

[3] At the hearing, Wills inaccurately refers to some of these events, such as the September 22, 2020 meeting, as occurring in August. However, he later testified that the meeting occurred in September, as reflected in the memorandum he authored recommending her demotion. Moton also acknowledges that the meeting occurred in September, both in her request for a CSC appeal and in her testimony at the hearing.

Moton's action on September 3, 2020, in which she scheduled a meeting with himself and Robert Turner, Jr. (S&WB's General Superintendent at the time), without Wills' knowledge. Wills said that this action circumvented the chain of command at S&WB, and that when he informed Turner that he was unaware of the subject of the meeting he was told that Turner would have the meeting cancelled so that Wills could meet with Moton first. Wills attempted to contact Moton regarding the meeting, but she was unresponsive. Wills also testified that around this same time, Moton failed to complete an assignment due on September 9, 2020.[4]

Wills explained that, due to a storm, he was unable to meet with Moton regarding these two issues (the meeting Moton scheduled with Turner, and her failure to complete an assignment) until September 22, 2020.[5] Wills testified that Moton at first seemed "reluctant" at the meeting, but that when he asked her why she was not comfortable bringing her issues to him, she "got a little more relaxed" and admitted that she felt they were "not on the same page." In particular, Wills recounted that Moton complained about his failure to schedule a meeting between himself, Moton, and two other S&WB employees (Alana Jones and Kathy Adams), regarding a grievance filed against Moton by one of the employees (Adams). Wills said that he explained to Moton that, per S&WB's procedure, the grievance had to proceed through the immediate supervisor, Alana Jones. Wills recalled that once this was explained to her, Moton seemed satisfied. However, when he asked if she had any other issues, Wills said that Moton complained about the building's air

---

[4] Both Wills and Moton testified that Moton was out sick the day the assignment was due. However, Wills noted that the assignment was given to Moton on August 31, 2020, over a week before.

[5] *See* footnote 3.

conditioning control unit (the thermostat) being locked.[6] Wills said that Moton "felt like that was personal", and said that he reassured her that it was not. Wills testified that he also discussed the missed assignment with Moton at the meeting, and that she agreed with and understood what was expected of her in the future.

Wills said that, at the conclusion of the September 22 meeting, he asked Moton if she still felt she needed to speak with Turner, and that she responded "no, honestly, I am good . . . I just felt like we were on different pages, but I see that it was just a misunderstanding." Wills noted that he "actually walked away from the meeting feeling very positive about that particular meeting" and about "continuing the relationship that we had."[7]

However, the very next day, another incident with Moton occurred which Wills described as "the last straw." According to Wills, he received a phone call from Moton on the afternoon of September 23, 2020, complaining again about the building's air conditioning. "[S]he was just irate. Immediately on the phone, she's yelling, making accusations, saying things, such as, you are allowing your staff to dictate and control who gets air." Wills said that Moton told him that another employee, Alana Jones, was unwell as a result of the heat and about to pass out. Wills testified that after repeatedly advising Moton to calm down and stop yelling, he promised to have a building maintenance employee check on the thermostat and

_____

[6] Wills explained that the building's air conditioning unit was "not a house unit where you can just continue to adjust the thermostat . . . it was recommended that we have [it set to] a certain temperature . . . A post-it note was put on side of the thermostat stating this, stating that it must stay at this [temperature,] with my name on it. It was being ignored."

[7] Wills testified repeatedly that, prior to these events, he felt that he had a good relationship with Moton, a relationship which was formed before she was even made a part of the Support Services Department. In fact, Wills testified that when Moton first became interested in working in Support Services, it was he who she approached about the position, and that he interviewed her and later recommended her for the job (Wills' signature also appears on the paperwork for Moton's requisition by Support Services).

authorized Moton to call an ambulance for Jones if needed, but that Moton told him that was unnecessary. Wills testified that after the phone call with Moton, he called Jones to check on her and that she denied she was about to pass out. Wills said he offered both Moton and Jones the ability to leave and work from home if the heat was unbearable, but that Jones told him she could deal with the heat. Wills recounted that he travelled to the office himself to check on the situation, and found the thermostat set to 70 degrees and the air conditioning functioning, but ordered the unit to be inspected by a vendor for leaks or any other problems. Wills also testified that, prior to his departure, Moton apologized to him and explained she was just frustrated.

Wills explained that he considered Moton's behavior and tone in the September 23, 2020 phone call to be inappropriate, and insubordinate. Wills testified that it was at this point that he decided Moton should not remain employed at Support Services. After consulting with S&WB's Employee Relations Department about the required procedure for demoting an employee on probationary status in a promotional position, he prepared a memorandum recommending Moton not be given a permanent position in Support Services. That memorandum, dated October 1, 2020, documented the various incidents involving Moton throughout her time at Support Services, albeit in less detail than as described in Wills' testimony. The memorandum concluded that "[t]his type of behavior is not conducive to the forward progress we are attempting to make at Support Services. At this time, it appears that Support Services is not a good fit for Ms. Moton." Moton's demotion was approved by Employee Relations, and she was notified of her demotion on October 9, 2020.

As previously noted, Moton has a very different view of the factual circumstances that led to her demotion. Moton flatly denies that she was ever counseled about or had a meeting regarding her demeanor. Moton does acknowledge the September 22, 2020 meeting with Wills, but testified that she could not remember the gist or context of that conversation. Moton also acknowledged the incident of September 23, 2020, when she called Wills regarding the building's air conditioning. Moton spoke at length about the office building's air conditioning unit and who had access to it; however, she denied apologizing to Wills regarding her demeanor during the call.

Moton alleges that she was demoted because she was a whistleblower within S&WB. Moton testified that sometime prior to September 2, 2020, she had requested an internal audit of one of S&WB's vendors, Southern Tire, which she believed may have been overcharging S&WB. Moton also said that, since filing her CSC appeal, she has been contacted by the Office of the Inspector General regarding this audit. Moton was unable to definitively say that Wills became aware of this audit request prior to her demotion; rather, Moton testified that Wills "probably" became aware of the audit request on September 3, 2020, pointing to the fact that Wills documented that date regarding her failure to follow the chain of command (her attempt to schedule a meeting with Turner).

Moton also testified that she was eventually able to meet with Turner on October 1, 2020. Moton alleged in her appeal, and testified, that she contacted Turner regarding Wills' failure to follow S&WB's take-home vehicle policy, potential payroll fraud, and dishonesty regarding certain contracts and vendors.[8]

_____

[8] This testimony, however, was not consistent with prior testimony in which Moton stated that she could not recall specifically what she told Turner about Wills.

However, Moton's testimony regarding the October 1, 2020 meeting was in conflict with Turner's, who testified that Moton's primary issue at the meeting was access to the building's air conditioning control.[9] Importantly, Turner testified that he did not discuss the meeting or Moton's complaints with Wills until October 16, 2020, over two weeks from when Wills drafted the memorandum recommending her demotion.[10]

***Procedural Background***

Following her October 10, 2020 demotion, Moton timely filed three appeals with the CSC, bearing docket numbers 9222, 9223, and 9224. Docket number 9222 is Moton's general disciplinary appeal regarding her demotion; docket number 9223 alleged discrimination based on race, sex, and age; docket number 9224 alleged discrimination based on whistleblower activities. Prior to submission to the CSC, Moton voluntarily dismissed her appeal alleging discrimination based on race, sex, and age, bearing docket number 9223. Therefore, it is not before this Court.

The CSC held a two-day hearing regarding Moton's remaining two appeals, bearing docket number 9222 (a general disciplinary appeal) and docket number 9224 (alleging whistleblower discrimination). On January 24, 2022, the CSC issued a decision denying both appeals, finding that Moton had no right to a

---

[9] Turner testified that "a number of other issues" were brought up in that meeting, including the fact that Wills and his staff were working from home (as authorized by Turner), and issues with on-call pay. However, Turner testified that these additional issues were "mostly general things with not a whole lot of detail", and does not even mention Moton bringing up issues regarding the take-home vehicle policy (which pre-dated Wills and was already being addressed), payroll fraud, or dishonesty regarding certain contracts and vendors.

[10] This fact was corroborated by evidence (an electronic calendar entry), admitted at the CSC hearing, showing that Turner had a meeting with Wills on that date.

general disciplinary appeal and had failed to carry her burden of proof as to whistleblower discrimination. This timely appeal followed.

## LAW AND ANALYSIS

### *Standard of Review*

Decisions of the CSC are subject to this Court's review to determine whether they are arbitrary, capricious, or an abuse of discretion. *Byrd v. Dep't of Police*, 2012-1040, p. 9 (La. App. 4 Cir. 2/6/13), 109 So.3d 973, 980. Factual findings of the CSC will not be set aside unless they constitute manifest error or are clearly erroneous. *Id.* at p. 10, 109 So.3d at 980. Questions of law and procedure are reviewed *de novo*. *Id.* Regarding mixed questions of law and fact, this Court affords CSC decisions great deference. *Orazio v. Dep't of Police*, 2019-0230, p. 7 (La. App. 4 Cir. 6/19/19), 275 So.3d 340, 345.

### *CSC Appeal Docket Number 9222*

In her first assignment of error, Moton contends that the CSC erred by not finding that S&WB failed to provide sufficient notice of the grounds for her demotion. The letter sent to Moton notifying her of the demotion, dated October 9, 2020, stated that based on her working test period, "Support Services has concluded that you are not suitable for this position." The letter also cited a Civil Service Rule providing that an employee may be removed from their position at the discretion of the employer if "the working test period indicates that (1) the employee is unable or unwilling to perform his/her duties satisfactorily or (2) his/her habits and dependability do not merit his/her continuance in the service." Rules of the Civil Service Commission for the City of New Orleans, Rule VII,

8

Section 1.1. Thus, S&WB properly notified Moton of the grounds for her demotion.

Conversely, Moton argues that S&WB's admitted failure to contemporaneously document the incidents leading to Wills recommending her demotion violates certain S&WB policies, and/or that S&WB's notice was insufficient because it failed to include Wills' memorandum recommending her demotion. However, because we find Moton has no right to a general disciplinary appeal, we need not reach the merits of this assignment of error.

As previously discussed, Moton's position in Support Services was probationary, subject to a one-year working test period ending on October 27, 2020.[11] The Civil Service Rules provide that "[r]egular employees in the classified service shall have the right to appeal disciplinary actions to the [CSC]." Rules of the Civil Service Commission for the City of New Orleans, Rule II, Section 4.1. Because Moton was demoted prior to the end of her working test period, she was not yet a "regular employee"[12] in her position in Support Services, and had no right to a general disciplinary appeal of her demotion. *Balancier v. Sewerage & Water Bd. of New Orleans*, 2022-0255, p. 4 (La. App. 4 Cir. 10/19/22), 351 So.3d 439, 443 (probationary employees have no right of appeal) (citing *Harness v. New Orleans Recreation Dev. Comm'n*, 2017-0107, p. 3 (La. App. 4 Cir. 6/14/17), 222 So.3d 820, 822); *see also Bordelon v. Dep't of Police*, 389 So.2d 905, 906 (La. App. 4th Cir. 1980) (holding that civil service employee who had gained

---

[11] *See* Rules of the Civil Service Commission for the City of New Orleans, Rule VII, Section 1.1 ("[e]very person appointed to a position in the classified service . . . shall be tested by a working test while occupying the position.")

[12] "Regular employees" is defined in the Civil Service Rules as "an employee who has been appointed to a position in the classified service . . . and who has completed the working test period." Rules of the Civil Service Commission for the City of New Orleans, Rule I, Section 1.64; *also* La. R.S. 33:2393(27) (same).

permanent status in one position but who was probationary in a promotional position had no right to appeal demotion from the probationary promotional position).

We find that Moton had no right to appeal her demotion from her probationary promotional position in Support Services. Accordingly, the CSC's dismissal of that appeal, bearing docket number 9222, is hereby affirmed.

### CSC Appeal Docket Number 9224

While probationary employees in the civil service ordinarily have no right to appeal, the Constitution demands an exception for those employees alleging they were subject to discipline as a result of discriminatory animus. La. Const. art. X, § 8(B). This holds true whether the employee in question is claiming discrimination based on race, sex, or age, or whether the employee claims to have been subjected to discipline due to whistleblowing activity. *Moore v. New Orleans Police Dep't*, 2001-0174, p. 7 (La. App. 4 Cir. 3/7/02), 813 So.2d 507, 511; Rules of the Civil Service Commission for the City of New Orleans, Rule II, Section 10.1.

As previously noted, Moton argued before the CSC and argues to this Court that she was demoted due to whistleblower discrimination. Specifically, Moton argues that Wills recommended her demotion because (1) she requested an internal audit of one of S&WB's vendors (Southern Tire); and/or (2) due to her October 1, 2020 meeting with Turner, in which she raised certain issues regarding Wills. Civil Service Rule II, Section 10.1, provides in pertinent part that:

> No employee shall be subjected to discipline or discriminatory treatment by an appointing authority because he or she gives information, testimony or evidence in a prudent manner to appropriate authorities concerning conduct prohibited by law or regulation which

10

he or she reasonably believes to have been engaged in by any person(s).

In that portion of the decision denying Moton's whistleblower appeal, the CSC found that Moton failed to carry her burden of proving the factual basis for the alleged discrimination. This Court agrees.

Regarding Moton's request for an internal audit of Southern Tire, Moton was unable to offer any proof that Wills was even aware of the audit request prior to recommending her demotion. In fact, Moton herself was unable to testify definitively as to when, or even if, Wills learned of her request; instead, Moton testified that Wills "probably" became aware of the audit request the day after she made it, pointing to an entry in Wills' memorandum dated that day, which described Moton's attempt to schedule a meeting with Turner without Wills' knowledge. However, mere speculation as to Wills' knowledge of the audit request is insufficient to carry Moton's burden.

Regarding her October 1, 2020 meeting with Turner, Moton was similarly unable to show that Wills was aware that it occurred prior to recommending her demotion. Moton relies primarily on the fact that Wills' memorandum recommending her demotion was sent on the same day as her meeting with Turner, October 1, 2020. However, Wills testified that he began drafting that memorandum over a week prior, immediately following the "last straw" phone call he had with Moton relating to the building's air conditioning. Additionally, Turner himself testified that he did not inform Wills of the October 1 meeting until October 16, 2020, weeks after Wills recommended Moton's demotion. Even setting aside Turner's testimony, "[t]iming of the dismissal alone is insufficient to carry the employee's burden of proof. Employee fault may be a sufficient independent basis

for termination coincident with the employee's [protected activity]." *Hansford v. St. Francis Med. Ctr., Inc.*, 43,984, p. 5 (La. App. 2 Cir. 1/14/09), 999 So.2d 1238, 1242 (citation omitted).

Finally, in Moton's second assignment of error, she argues that "the [CSC] erred in overruling the Hearing Examiner Report which was overwhelmingly favorable to Appellant, Yolanda Moton." However, this assignment of error also lacks merit, as the CSC "is not bound to accept the hearing examiner's factual determinations and recommendation." *Jenkins v. New Orleans Police Dep't*, 2022-0031, p. 2 (La. App. 4 Cir. 6/22/22), 343 So.3d 238, 240 n.4 (quoting *Saacks v. City of New Orleans*, 95-2074, p. 20 (La. App. 4 Cir. 11/27/96), 687 So.2d 432, 444). Additionally, the Hearing Examiner's recommendation in this case relied on the erroneous finding that Wills' memorandum recommending Moton's demotion was prepared over five weeks after the "last straw" phone call, when in fact it was begun immediately following that incident (which occurred on September 23, 2020) and completed the following week (on October 1, 2020).[13] Thus, this Court finds no manifest error in the CSC's finding that Moton failed to carry her burden of proof as to whistleblower discrimination.

## CONCLUSION

For the foregoing reasons, the CSC's decision denying Moton's appeals was neither arbitrary, capricious, nor an abuse of discretion. Accordingly, it is hereby affirmed.

**AFFIRMED**

---

[13] *See* footnote 3. Wills inaccurately testified that the "last straw" phone call with Moton occurred on August 23, 2020, though he later testified that it occurred on September 23, consistent with the memorandum he prepared recommending her demotion. Moton also acknowledged in her testimony that the phone call took place in September.

12